## BANVILLE *v.* SULLIVAN.

PRACTICE; ATTACHMENT AND GARNISHMENT; INTERROGATORIES, FILING OF.

A garnishee in default in answering interrogatories served upon him with a writ of attachment or garnishment, may answer the interrogatories at any time before proceedings are had upon his default, and leave of court is not necessary to enable him to do so; especially where the writ is in aid of the execution of a decree in equity.

No. 654. Submitted April 9, 1897. Decided April 26, 1897.

HEARING on an appeal by a garnishee from a judgment

of condemnation, in proceedings by way of attachment or garnishment issued by way of execution in a suit in equity. *Reversed.*

The COURT in it opinion stated the case as follows:

This is an appeal by a garnishee, Catherine Banville, from a judgment rendered against her in the Supreme Court of the District of Columbia under a writ of attachment or garnishment issued by way of execution in a suit in equity in said court, wherein the appellee, John P. Sullivan, was complainant, and one Frank Mace and others were defendants. There was a decree in this equity suit for the payment by Mace and another defendant to the complainant, Sullivan, of the sum of $400, with interest thereon from a certain specified day, and for execution therefor as at law.

Upon this there was a writ of attachment issued on June 22, 1896, which was on the same day served by the marshal on three several persons, one of them being the appellant, Catherine Banville. What the result was of the service upon the other two parties does not appear from the record before us, and we presume it is not important in this proceeding. Catherine Banville made answer to the interrogatories served upon her with the writ, although not until August 20, 1896, nearly two months after the date of the service of the writ, notwithstanding that a rule of the court, a copy of which was served upon her with the writ, required that the interrogatories should be answered within ten days after such service; and her answer was to the effect that she was not indebted to the defendants, or either of them, and had no goods, chattels or credits of the defendants, or either of them, in her possession, either at the time of the service of the writ or at any time between that date and the time of answering. It seems that ten days after this she filed some affidavits apparently intended to explain or excuse her delay in answering.

No action, however, had been taken by the appellee to

enforce the default of the appellant; nor was there any such action, or apparently any further action of any kind by any of the parties until December 19, 1896, when the appellee moved for judgment of condemnation against the garnishee, the appellant here. The motion was allowed by the court, and on January 5, 1897, judgment was rendered against the appellant for the whole amount found due by the decree, and execution was awarded against her as at law. From this judgment the garnishee appealed.

*Mr. Henry E. Davis* for the appellant:

At common law, a judgment by default could not be taken by a plaintiff who rested upon his right to such judgment until after plea pleaded or other step taken by a defendant in opposition to the claim of the plaintiff. 1 Tidd's Pr. 566–568; *Minns* v. *Baxter*, 1 T. R. 16; *Sherson* v. *Hughes*, 5 T. R. 35. The principle underlying is, that by resting on his rights the plaintiff is held to have tacitly assented to an extension of the time within which the defendant might take the proper step, and also to waive his right to claim judgment by default against the defendant, and thereby permit the defendant to take the proper step at any time before judgment was actually applied for, and is also guilty of such laches on his own part as to disentitle him to take advantage of the defendant's neglect. 1 Tidd's Pr., Id., and cases cited under the paragraph next following·

This principle has been uniformly recognized in the modern practice, whether at common law, or in equity, or under codes and statutes. *Castle* v. *Judson*, 17 Ill. 381; *Cook* v. *Forrest*, 18 Ill. 581; *Corbin* v. *Turrell*, 20 Ill. 516; *Mason* v. *Abbott*, 83 Ill. 445; *Pett* v. *Clark*, 5 Wis. 198; *Hurlock* v. *Reinhart*, 41 Tex. 580; *Railroad Co.* v. *Scott*, 66 Tex. 565; *Hill* v. *Supervisors*, 10 Oh. St. 621; *Walker* v. *Tiffin Co.*, 2 Colo. 89; *Manville* v. *Parks*, 7 Colo. 128; *Sieber* v. *Fruck*, 7 Colo. 148; *King* v. *Hicks*, 32 Md. 460; *Gill* v. *Woodfin*, 25

L. R. Ch. Div. 707; *Woosley* v. *Memphis Co.*, 28 Ala. 536; *Bingham* v. *Morris*, 7 Cr. 99; *Redfield* v. *Miller*, 59 Iowa, 393.

Applying the principle to this case, the fact is seen to be that although the appellant was actually in default after the service upon her of the writ of attachment, the appellee yet neglected to take advantage of the default and made no attempt to do so until after the appellant had answered in due form, showing that she had nothing in her hands subject to satisfaction of the decree in favor of the appellee. Under the circumstances, the appellant thus appearing to have a perfect defense on the merits, it was error to give judgment of condemnation in favor of the appellee, who had slept upon his rights, and so, being guilty of laches, was *in pari delicto* with the appellant.

*Mr. James A. D. Richards* and *Mr. Lorenzo A. Bailey* for the appellee:

1. The time limited by the rule of court for the garnishee to answer expired ten days after service of the interrogatories upon her. Upon the expiration of twenty days, exclusive of Sundays and legal holidays, after such service, the right of the plaintiff to judgment of condemnation was absolute, and by the terms of the rule he could claim it "at any time" thereafter, as of course. The statute is mandatory, containing no exceptions and leaving nothing to the discretion of the court in such case. Maryland Act of 1795, Ch. 56, Sec. 5; Common Law Rule No. 86, Supreme Court, D. C.

The limitation of time was binding upon the court as well as upon the garnishee. The rule of court has the force of law. The court had no power to extend the time for answering, or to excuse failure to answer, within the time limited by the rule. *Wall* v. *Wall*, 2 H. & G. 79, 81, 82; *Thompson* v. *Hatch*, 3 Pick. 512, 516; *Tripp* v. *Brownell*, 2 Gray, 402; *Coyote Co.* v. *Ruble*, 9 Oregon, 121; *Hughes* v. *Jackson*, 12 Md. 450, 463. Where the legislature makes a

plain provision, without making any exception, the courts can make none. *French* v. *Spencer*, 21 How. 228; *Yturbide* v. *United States*, 22 How. 290.

2. If the court had such power, the decree appealed from is in itself a denial of any extension of time to the garnishee and a refusal to accept her excuse for delay, and such denial and refusal, being in the exercise of judicial discretion, is not appealable. *Smith* v. *Brown*, 5 Cal. 118.

3. If the court had such power and had been called upon to exercise it, the record shows this to be a proper case to deny such application. *Anderson* v. *Graff*, 41 Md. 602; *Fifield* v. *Wood*, 9 Iowa, 249; *Boyd* v. *Canal Co.*, 17 Md., 195; *Burch* v. *Scott*, 1 G. & J. 393, 426. Ignorance on the part of a garnishee of the necessity of appearing in court and contesting an attachment, affords no sufficient ground for striking out the judgment of condemnation. Shinn on Attachment, Sec. 699; *Friedenrich* v. *Moore*, 24 Md. 295, 307.

4. The failure of the garnishee to answer within the time limited is an admission of assets, and the plaintiff's right to judgment of condemnation is then absolute, unless he waive it. *Powder Co.* v. *Railroad Co.*, 63 Md. 76. Sullivan never waived his right. A waiver, to be binding, must operate by way of estoppel or be supported by a valuable consideration, and must be an intentional act. 28 A. & E. Enc. 531, and note 1; Id. 527, and note 1.

5. Sullivan was not bound to notice an answer not filed in time. A paper filed after the time prescribed by law, and without leave of the court, will not be considered by the court and should be treated as a nullity. 87 U. S. 264.

Mr. Justice MORRIS delivered the opinion of the Court:

The affidavits filed by the garnishee in the court below on August 27, 1896, are not made part of the record in any way to require consideration from us, and must therefore be disregarded on this appeal. They are not noticed by the court below either in its judgment or otherwise; and

consideration of them is not required for the determination of the question before us.

That question is, whether in proceedings in attachment or garnishment by way of execution, when the answer of the garnishee to the interrogatories and writ served upon him has not been filed within the time limited by the statute or by the rules made in pursuance of the statute, such answer can validly be filed at any time afterwards before proceedings are had upon the default, and should thereupon, even though no consent of court has been sought or had for its filing, be considered by the court as though it had been filed in due time. This question we find ourselves compelled to determine very differently from the court below.

That pleadings should be filed in due time; that all proceedings required to be had in court should be taken in proper season; that rules of practice limiting time should be enforced with reasonable strictness, and that excuses for the neglect or disregard of such rules should not be lightly entertained, is the demand of good order and of justice, for the proper administration of which such limitations have been prescribed. For without such limitations the due administration of justice would become impossible; and without the enforcement of such limitations only disorder and confusion would result, and the authority of the courts would fall into contempt.

Some of these limitations are of a jurisdictional character—such as the statute of limitations itself in some cases, the provisions for taking appeals, the rules regarding motions for new trials and in arrest of judgment, and other regulations, whether prescribed directly by statute, or by rules of court having the force of statutory provision, which might readily be cited; and when they are of such a character, they are a law unto the courts themselves as well as to litigants, and may not be disregarded in special cases even for assumed hardship—although, of course, there are cases where parties may be estopped by their own conduct or

course of action from seeking the enforcement even of limitations of a jurisdictional character.

But where causes are pending in a court undetermined, and especially where a proceeding is in its nature a matter of absolute right, such as pleadings usually are, apart from the limitations by which it is required that they should be guarded, it has never yet been heard, either under the common law in England, or in the State of Maryland, from which we have derived our practice, or in the District of Columbia itself during the period of nearly one hundred years of its separate judicial existence, that parties may not waive limitations of time either by their express consent or by implication, through failure to take advantage of default.

This position does not seem to be controverted by the appellee; although the argument on his behalf would tend to question its correctness. The contention seems to be that there is something exceptional in the law of garnishment or in the rules of court relating thereto that precludes the application to it of the well established practice in other cases. It is argued that, although an answer in equity or a plea at common law may be properly filed, even without leave of the court, at any time after the rule day for filing such answer or plea, yet an answer to interrogatories propounded with a writ of garnishment may not be so filed, whether default has been taken or not, and whether leave of the court has or has not been asked.

We fail to find anything exceptional in the law of garnishment or in the rules of court made in pursuance of it and to give it effect, that would warrant this contention. Nor do we find anything in the authorities cited on behalf of the appellee that would have that effect in opposition to the well established practice in this District in all such cases.

Attachments by way of execution upon judgments were authorized in Maryland by the act of Assembly of that State of 1715, Ch. 40, Sec. 7. The provision of that act is that, if the garnishee does not show cause to the contrary on the

day of the return of the writ, or shall not then appear, "the court shall and may condemn the goods, chattels or credits attached." No formal interrogatories were provided by that act to be exhibited to the garnishee and answered by him. But the act of Assembly of the same State of 1795, Ch. 56, the principal purpose of which seems to have been to authorize the issue of writs of attachment by way of mesne process, provides in its fifth section that "in all cases of attachments it shall and may be lawful for the plaintiff to exhibit interrogatories in writing to the garnishee aforesaid, who shall, by rule of court, answer each and every of the interrogatories touching or concerning the property of the defendant, in his possession or charge, or by him due or owing, at the time of serving of such writ of attachment, or at any other time; and if such garnishee shall neglect or refuse so to do, the court is hereby directed to adjudge that such garnishee hath in his possession property of the defendant, or is indebted to such defendant, to an amount and value sufficient to pay the debt, damages and interest of said plaintiff, and costs, and execution shall issue as in other cases of condemnation in the hands of garnishees."

These acts are in force in the District of Columbia, and they are the acts under which the proceedings in the case before us have been sought to be had.

The act of 1795, it will be noticed, contemplates the formulation of a rule of court for its enforcement; and the rule for that purpose promulgated by the Supreme Court of the District of Columbia, and in force at the time at which these proceedings were instituted, and at the present time, is the following:

"The plaintiff, upon issuing such writ of attachment (attachment on judgment), may exhibit interrogatories to be answered by the garnishee within ten days after the service of the same upon him; and upon his failure to answer, judgment may be entered against him at any time after the twentieth day, exclusive of Sundays and legal holidays, oc-

curring after the service of said attachment upon him for the full amount of the judgment.

" If by the answer of the garnishee, or by the verdict of a jury, it shall appear that he has property of the defendant, judgment of condemnation of said property or credits shall be entered, but not for an amount in excess of the original judgment and the costs, and execution shall issue thereon."

These statutes and the rule of court made in pursuance of them, are no more mandatory or imperative than other similar rules and statutes which have been invariably held to be merely authoritative, and not imperative, except at the option of the party seeking the exercise of the authority and entitled to have it exercised in his favor. The ordinary rules for the regulation of the time of pleading are couched in similar and even more imperative language, and have equally the sanction of statute for their formulation. And yet it has been, as we have stated, an unheard of thing in the courts of the District of Columbia, that parties in default as to the time of pleading might not plead freely and without leave except as to certain pleas regarded technically with disfavor, at any time thereafter until some action has been had against them to enforce such default. The invariable practice has been that, notwithstanding the lapse of time limited by the rules of court, pleas may be filed and should be received at any time, until default taken. And this practice, which is plainly in no way inconsistent with the purposes of justice, we regard as so well established that citation of authorities in support of it may be regarded as wholly unnecessary. But reference may be had to 1 Tidd's Practice, 566; *King* v. *Hicks*, 32 Md. 460; *Crabtree* v. *Green*, 36 Ill. 279; *Bowers* v. *Dickerson*, 18 Cal. 420; *Dole* v. *Young*, 11 Johns. (N. Y.) 90; *Boyd* v. *Canal Co.*, 17 Md. 195.

This is the rule and the practice at common law. Much more is it and should it be the rule and the practice of

equity, from which the maxim has been derived that time
is not of the essence of contracts, which does not favor the
infliction of forfeitures or defaults, and of which a great dis-
tinguishing feature is discovery, and not default or the in-
fliction of penalty.   And the present proceeding, although
legal in its character and statutory in its origin, it must be
remembered, is sought to be conducted in a court of equity,
the power of which over its own process is so much greater
than that of a court of common law.   And this is merely a
process to enforce satisfaction of a decree in equity for the
payment of money.

It is no objection that the appellant did not obtain leave
of court to answer the interrogatories.   If the appellee's con-
tention that the statute and the rule are so imperative that
the garnishee's answer, if not filed within the specified time,
could not be filed at all, were correct, application to the
court would be useless, for the court would have no au-
thority to extend the time, the statute and the rule both
being silent on the subject.   If, on the other hand, the
statute and the rule are not thus imperative, there was no
necessity to apply to the court, for there was nothing in the
record to interpose any obstacle to the answer.   Application
to the court for leave to interpose some pleading or proceed-
ing is proper only when the court has discretionary power
to grant it, and when there is no imperative statute or rule
of court to preclude its allowance; and it is necessary only
where there has been already some pleading or proceeding
by the party applicant inconsistent with that proposed by
the application to be had; as, for instance, pleading over
after a demurrer has been interposed and overruled; or
when it is anticipated that the adverse party may proceed
to enforce default in the absence of action by the court.
The court in such cases does not move of its own accord;
nor is there any peremptory requirement of law that it
should do so.   Only upon the application of an adverse
party is default enforced under our practice, and it is always

in the power of such party to enforce it, and to enforce a strict compliance with the rules by prompt action on his part. If he fails to take such action, to the extent of his failure he waives his right, and is held tacitly to consent to the enlargement of the time within which his opponent may act. The limitation of time is for his benefit as well as for the benefit of all litigants in his situation. If he chooses to waive it, as he may do either tacitly or by express agreement, there is nothing either in the statute or in the rule of court, or in the policy of the law, that would prohibit such waiver on his part. The statute or the rule might have been made mandatory in the sense and to the extent claimed for them by the appellee; and apt words might readily have been used for that purpose. But there are no such words; and there would be no good purpose to be subserved by their insertion.

It is argued, also, on behalf of the appellee, that a garnishee's answer to interrogatories is evidence, not pleading, in favor of which position the case of *Devries* v. *Buchanan*, 10 Md. 210, is cited; and that, therefore, the practice applicable to pleadings does not apply to answers to interrogatories. We see no reason to question the correctness of the statement in the case of *Devries* v. *Buchanan* in the sense and in the connection in which it was made, but it does not support the conclusion sought to be drawn from it by the appellee. For it is not of the slightest consequence in this connection whether we designate an answer to interrogatories as a pleading or as a matter of evidence; it is in any event a proceeding in court for the introduction of which there is a limitation of time by a rule of court, and with reference to which no good reason has been or can be suggested that would distinguish it from any other proceedings so limited so far as to preclude a party in default from repairing his default at any time before action thereon is had against him, or to preclude the opposing party from waiving the default by his inaction.

11 Ct. App.—4

Nor do we find any force in the argument that the failure of the garnishee to answer in due time is an admission of assets in his hands. Failure to plead or answer in any case is equally an admission of the justice of the claim with reference to which the default has been had, and of the claimant's right to judgment thereon in his favor. Yet, in view of what we have seen to be the uniform practice on the subject, such tacit admission, although a sufficient basis upon which the opposing party may act, if he chooses to act, is not such as to preclude denial of liability by plea or answer interposed after the lapse of the time limited and before action taken on the default.

Opposed to the doctrine sustained by our practice are supposed to be certain decisions cited on behalf of the appellee from Georgia and Louisiana, and also from Iowa and Illinois. But these decisions wholly fail to sustain the appellee's contention.

The case of *Whiteside* v. *Tunstall*, 17 Ill. 258, which is one of those cited in this connection, merely holds that default is an admission of indebtedness—a doctrine which no one controverts. The case of *Scamahorn* v. *Scott*, 42 Iowa, 529, holds that a motion to set aside a judgment of default for failure to answer a writ of attachment must be made at the same term at which the default was taken. The case of *Bearden* v. *Metropolitan Street R. Co.*, 82 Ga. 605, held that, when there was a writ of garnishment returnable to a certain term of court, and no answer to it was then filed, and another term several months afterwards supervened and there was even then no answer, and the plaintiff in the suit moved for judgment, and the court without cause refused to allow the motion or to enter judgment, and on the contrary gave the counsel for the garnishee, in the words of the record of the case, "further time to look into the matter," and still no excuse was given for the delay in answering, but there was an answer afterwards filed by the garnishee, and a motion to strike it out and to enter judgment was refused

by the court, this was error. In fact, if there had been any discretion in the court when the first motion for judgment was made, its action might perhaps be characterized as savoring of an abuse of such discretion. But plainly this case gives no countenance to the appellee's theory that, if the garnishee fails to answer within the time limited, he cannot answer at all, and his default is a conclusive admission of assets of the defendant in his hands. On the contrary, it is quite plain from a careful reading of the case, and from the other cases in the same State cited in the opinion, that the court could for good cause shown enlarge the time for answering, which it could not do if the statute were of the peremptory character claimed for it. Moreover, we are not advised how far the attachment laws of the State of Georgia, upon which that opinion was based, are conformable to the laws in force in the District of Columbia.

Four cases from Louisiana are cited. One of these, the case of *Foley* v. *Harrison*, 5 La. Ann. 82, has no bearing whatever on the subject. In another, that of *Sturges* v. *Kendall*, 2 La. Ann. 565, it is held that the forbearance of a plaintiff to take judgment against the garnishee at the same time that he takes it against the principal defendant, is no bar to his taking judgment subsequently against the garnishee. In the case of *Henry* v. *Bryce*, 11 La. Ann. 691, it is held that if a married woman does not answer interrogatories within the time limited, default may be taken against her, notwithstanding her disability of coverture. And in the fourth and last case cited, that of *Warren* v. *Copp*, 48 La. Ann., cited from 19 Southern Reporter, p. 746, it was held that where a garnishee was negligent in answering interrogatories, the negligence of a messenger being imputed to him, and permitted judgment to be entered against him, he could obtain no relief from the judgment.

It is difficult to see how any of these decisions can be construed to support the contention of the appellee. Of course, after judgment entered, or default taken, or even proceed-

ings had looking to that end, liabilities become fixed, and parties in default can have relief only for good cause shown. But that is a proposition universally accepted; and the decisions cited add nothing to its force for us. Those decisions fail utterly to touch the question of the right of a garnishee to answer, without special leave of court, the interrogatories propounded to him, at any time before there is any proceeding or motion to enforce his default. That question we regard as fully settled by our invariable practice for more than a hundred years in all other similar cases.

Reference is also made to the case of *McPhaul* v. *Lapsley*, 20 Wall. 264 (cited as 87 U. S.), which arose under the laws of the State of Texas. In those laws was the following provision: " Every instrument in writing (properly recorded) shall be admitted as evidence without the necessity of proving its execution, provided that the party who wishes to give it in evidence shall file the same among the papers of the suit three days before the trial and give notice to the opposite party of such filing, and unless such opposite party, or some other person for him, shall within one day after such notice file an affidavit stating that he believes such instrument to be forged." In the case cited an affidavit had been filed, not within one day after notice given, but about twenty days afterwards, while the trial was in progress, and had been filed on behalf of a stranger to the record; and it was held that it was proper wholly to disregard such affidavit. That decision has no bearing on the case before us. The statute was a specific provision intended to facilitate the introduction of evidence; and to allow a departure from its terms, which would have the effect of operating as a surprise upon the opposing party, would be contrary to the elementary principles of justice.

We have thus carefully examined the authorities cited in behalf of the appellee in this case, for the reason that the judgment entered against the garnishee in the court below is a radical departure from the practice heretofore prevalent

in all such cases, and would have the effect of establishing an entirely new practice. We find no good reason for such departure, and no good purpose to be subserved by it in the administration of justice. Parties have it in their own power to proceed promptly to enforce defaults; but as long as they fail so to proceed, it is in the interest of justice that those in default should in the meantime be allowed to come in and remove the default.

From what we have said it follows that the order, judgment, or decree appealed from, whichever it be regarded, must be, and it is hereby, *reversed, with costs. The cause will be remanded to the Supreme Court of the District of Columbia with directions to vacate such order, judgment, or decree, and to overrule the complainant's motion for judgment, and for such further proceedings in the premises according to law as may not be inconsistent with this opinion. And it is so ordered.*